UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MOSHE LEHRER,

                              Plaintiff,

            v.

J&M MONITORING, INC. *and* JAMES A.
PATTON,

                              Defendants.

No. 20-CV-6956 (KMK)

OPINION & ORDER

<u>Appearances</u>:

Brian K. Condon, Esq.
Condon Paxos PLLC
Nanuet, NY
*Counsel for Plaintiff*

Daniel G. Ruggiero, Esq.
Law Office of Daniel G. Ruggiero
Newton, MA
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

        Plaintiff Moshe Lehrer ("Plaintiff") brings this Action against J&M Monitoring, Inc.

("J&M") and James A. Patton ("Patton"; collectively, "Defendants") for Defendants' alleged

breach of contract, breach of fiduciary duty, conversion, common law fraud, and unjust

enrichment, seeking monetary damages, including punitive and exemplary damages as well as

relevant fees, and an accounting of relevant corporate records.  (*See generally* Compl. (Dkt. No.

1).)  Before the Court are Defendants' Motion To Dismiss pursuant to Rule 12(b)(3) of the

Federal Rules of Civil Procedure ("Fed. R. Civ. P.") and 28 U.S.C. § 1406(a) as well as

Defendants' Motion to Amend their Answer pursuant to Fed. R. Civ. P. Rule 15(a).  (Defs.' Not.

of Mots. ("Not. of Mots.") (Dkt. No. 29).)  For the reasons explained herein, Defendants'

Motions are denied in part and granted in part.

## I.  Background

### A.  Factual Background

The following facts, drawn from Plaintiff's Complaint, documents appended to the

Complaint, and other matters of which the Court may take judicial notice, are construed in the

light most favorable to Plaintiff.  *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension*

*Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

J&M is a commercial and residential environmental service company located in Pikeville,

KY.  (Compl. ¶¶ 1, 13.)  Patton similarly lives in Pikeville, KY.  (*Id.* ¶ 14.)  Patton is the owner

of J&M.  (*See* Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 30) Ex. A

(Agreement Between James A. Patton DBA J&M Monitoring, Inc. and Moshe Lehrer DBA

TGVZG, dated Nov. 21, 2019) ("Agreement") (Dkt. No. 30-1).)[1]  Plaintiff alleges that he "has

an address" in Spring Valley, NY.  (Compl. ¶ 12.)

Plaintiff alleges that when Defendants "found [themselves] unable to pay back" certain

financial obligations, (*id.* ¶ 19), Defendants approached Plaintiff and offered Plaintiff 50% equity

---

[1] It is well-settled that "[w]here the claim is for breach of contract, the complaint is deemed to incorporate the contract by reference because the contract is integral to the plaintiff['s] claim."  *Airport Mart Inc. v. Dunkin' Donuts Franchising LLC*, No. 18-CV-170, 2019 WL 4413052, at *1 n.3 (S.D.N.Y. Sept. 16, 2019) (citation omitted); *see also Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F. Supp. 2d 344, 365 n.8 (S.D.N.Y. 2012) (collecting cases to support the proposition that "where the claim is for breach of contract, the complaint is deemed to incorporate the contract by reference because the contract is integral to the plaintiffs' claim" (quotation marks omitted)); *Verzani v. Costco Wholesale Corp.*, 641 F. Supp. 2d 291, 297–98 (S.D.N.Y. 2009) ("[W]here the claim is for breach of contract, the complaint is deemed to incorporate the contract by reference because the contract is integral to the plaintiffs' claim."), *aff'd*, 387 F. App'x 50 (2d Cir. 2010).  Accordingly, the Court deems the Agreement, attached as Exhibit A to Defendants' Memorandum of Law in Support of their Motion, incorporated by reference.

in J&M in exchange for $115,000.  (*Id.* ¶ 2, 20.)  Additionally, Defendants offered to put Plaintiff "on payroll and receive payment of $8,800" per month.  (*Id.* ¶ 21.)  Plaintiff alleges that to entice him to enter into this agreement, "Defendants provided [] Plaintiff[] with certain corporate documents showing how the business was going to fair [sic] going forward . . . includ[ing] but [] not limited to: (1) Accounts Receivable Spreadsheets; and (2) Cash Flow and Bill Payment Schedules for November, 2019; December, 2019[,] and January 2020."  (*Id.* ¶ 22, 23.)

On November 21, 2019, "Plaintiff and Defendants entered into an agreement."  (*Id.* ¶ 26; *see also id.* ¶ 3.)  Per the agreement, "Plaintiff[] would make three distributions to J&M as follows: (1) $45,000 payment on or before Thursday, November 21, 2019; (2) $35,000 payment on or before Thursday, January 2, 2020; and (3) $35,000 payment on or before Monday, February 3, 2020," (*id.* ¶ 25), in exchange for which "Patton would transfer 50% of his interest in J&M to [Plaintiff]," (*id.* ¶ 26).  Additionally, Plaintiff alleges that, "as collateral," Defendants provided Plaintiff "with approximately twelve (12) original titles to equipment owned by J&M." (*Id.* ¶ 25.)

Plaintiff alleges that on or around the same day of the transaction, Patton added Plaintiff as a partner to J&M's corporate bank account at Citizens Bank.  (*Id.* ¶ 28.)  Thereafter, Plaintiff alleges that he made 5 different wire transfers over the next three months in varying amounts to J&M, totaling $109,000.  (*See id*. ¶¶ 29–33, 38.)

Subsequently, Plaintiff alleges that when Plaintiff complained to Defendants about an unspecified "large discrepancy" in the business's cash flow, "Patton promised [] Plaintiff[] that more money was coming in shortly."  (*Id.* ¶ 36.)  Plaintiff alleges that, because "Defendants were not honoring [their] responsibilities under the Agreement, [he] did not make the next . . .

payment." (*Id.* ¶ 37.)  Subsequently, Plaintiff alleges, Defendants "improperly removed [him] from the J&M corporate bank account." (*Id.* ¶ 39.)

Plaintiff also alleges that J&M "maintained a second corporate bank account at Citizens [Bank] which was not disclosed to [] Plaintiff," (*id.* ¶ 40), which, Plaintiff further avers, "was used to hide the money that [] Defendants were receiving in Accounts Receivable so [] Plaintiff, a 50% owner of the J&M entity, had no knowledge or access to that account," (*id.* ¶ 41.)  Finally, Plaintiff alleges that Defendants have not provided Plaintiff with the equipment to which he was given title, which Plaintiff allegedly aimed to "sell . . . to recoup some of the monies he expended." (*Id.* ¶ 25.)

B.  Procedural Background

Plaintiff filed his Complaint on August 27, 2020.  (*See* Compl. (Dkt. No. 1).)  Defendants filed an Answer on October 27, 2020.  (Dkt. No. 9.)  Defendants filed a letter motion for a pre-motion conference on August 2, 2021, in anticipation of filing a motion to dismiss.  (Dkt. No. 23.)  Pursuant to the Court's order, (*see* Dkt. No. 24), Plaintiff responded to the letter motion on August 13, 2021, (Dkt. No. 25).  The Court thereafter set deadlines for Defendants' anticipated motion to dismiss.  (*See* Dkt. No. 27.)

On October 13, 2021, Defendants filed the instant Motion as well as a memorandum of law supporting the Motion.  (*See* Not. of Mots.; Defs.' Mem.)[2, 3]  On November 3, 2021,

_____

[2] The Court set Defendants' deadline for their motion to dismiss as September 19, 2021. (See Dkt. No. 27.)  Defendants timely submitted the Motion but inadvertently misfiled it.  (*See* Dkt. No. 28.)  Thus, the Court will still consider the Motion timely.

[3] The Court cannot overlook Defendants' subpar efforts in supporting the Motion, finding both a violation of the Local Rules as well as the Court's individual rules.  Defendants submitted a grand total of two sentences in its purported memorandum of law supporting its motion to amend their Answer.  Defendants cited nothing—zero case law whatsoever, nor any persuasive

4

Plaintiff filed a response in the form of an affidavit from Plaintiff.  (*See* Affidavit of Moshe Lehrer ("Lehrer Aff.") (Dkt. No. 31).) [4]  "Defendants did not file a reply.  The Court deems the Motion fully submitted."  *Marshall v. Griffin*, No. 18-CV-6673, 2020 WL 1244367, at *4 (S.D.N.Y. Mar. 16, 2020).

_____

treatises, law review articles, or any theoretical arguments—supporting the Motion to Amend. (*See* Defs.' Mem. 3.)  This is a far cry from a memorandum of law "setting forth the *cases and other authorities relied upon* in support of the motion."  Local Civ. R. 7.1(a)(2) (emphasis added).  Defendants also failed to conform to simple formatting instructions of double spacing and indents, despite having conformed appropriately in its prior section regarding improper venue.  (*Compare* Defs.' Mem. 3 *with id.* at 1–3.)  Defendants' Memorandum even lacks numbered pagination.  Accordingly, for reference, the Court cites to the ECF-stamp page numbers at the top right-hand corner of each page.

[4] Similarly, "[t]he Court cannot overlook [P]laintiff's subpar efforts in opposing the motion."  *Prakash v. Homecomings Fin.*, No. 05-CV-2895, 2006 WL 2570900, at *5 n.7 (E.D.N.Y. Sept. 5, 2006).  "Plaintiff fails to distinguish the cases cited by [D]efendant[s] and fails to cite any cases that [P]laintiff believes are on point.  In fact, in opposition to the [] [M]otion, [P]laintiff failed to submit a brief," *id.*, instead relying solely on his own affidavit.

Given Plaintiff's abject failure to respond to the (admittedly sparse) legal arguments made by Defendant in the form of a memorandum of law that the Court could consider, the Court would be within its authority to consider *all* of Plaintiff's claims abandoned or arguments conceded.  *See, e.g.*, *Verdi v. City of New York*, 306 F. Supp. 3d 532, 552 (S.D.N.Y. 2018) (holding that where the plaintiff "did not respond to [the defendant's] arguments in his opposition . . . [the] [p]laintiff abandoned his . . . claims," and "dismiss[ing] [them] with prejudice"); *McLeod v. Verizon N.Y., Inc.*, 995 F. Supp. 2d 134, 143 (E.D.N.Y. 2014) ("Indeed, courts in this circuit have held that '[a] plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitute an abandonment of those claims.'" (alteration in original) (quoting *Youmans v. Schriro*, No. 12-CV-3690, 2013 WL 6284422, at *5 (S.D.N.Y. Dec. 3, 2013))); *Brandon v. City of New York*, 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010) (collecting cases finding claims abandoned when a plaintiff fails to address the defendants' arguments); *cf.* Local Civ. R. 7.1(b) (providing that "all oppositions . . . with respect to motions shall comply with Local Civil Rule 7.1(a)(2)," which requires "[a] memorandum of law, setting forth the cases and other authorities relied upon in support of the motion, and divided, under appropriate headings, into as many parts as there are issues to be determined").  But for defense counsel's failure to raise the affirmative defense of venue or to move to amend the answer within 21 days, *see infra* II.B.1, Plaintiff's action would be subject to dismissal on these grounds.

II.  Discussion

A.  Standard of Review

"On a motion to dismiss a complaint under Rule 12(b)(3) for improper venue, 'the plaintiff bears the burden of establishing that venue is proper.'"  *Ne. Landscape & Masonry Assocs., Inc. v. State of Conn. Dep't of Labor*, No. 14-CV-9104, 2015 WL 8492755, at *2 (S.D.N.Y. Dec. 10, 2015) (quoting *Fedele v. Harris*, 18 F. Supp. 3d 309, 316 (E.D.N.Y. 2014)). In analyzing a claim of improper venue, a court must view all facts in the light most favorable to the plaintiff.  *See Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007).  Thus, a "[c]ourt must accept the facts alleged in the complaint and construe all reasonable inferences in the plaintiff's favor."  *Ne. Landscape*, 2015 WL 8492755, at *2 (alteration in original) (citation omitted).

The permissible venue in this Action is determined by the general venue provision for cases.  *See* 28 U.S.C. § 1391(b).  Under that statute, venue can be laid "in either (1) the district of the defendant's residence; (2) the district where a substantial part of the events giving rise to the claim occurred; or (3) if neither of those can be applied, any district where a defendant is subject to personal jurisdiction."  *Ne. Landscape*, 2015 WL 8492755, at *2 (citation omitted). Importantly, the Second Circuit has said that courts "are required to construe the venue statute strictly."  *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005) (citing *Olberding v. Illinois Cent. R.R.*, 346 U.S. 338, 340 (1953)).

"When considering a motion to dismiss for improper venue under Rule 12(b)(3), 'the plaintiff need only make a prima facie showing of venue.'"  *Dash v. Bank of Am. Corp.*, No. 18-CV-4807, 2019 WL 1780140, at *4 (S.D.N.Y. Apr. 23, 2019) (italics omitted) (quoting *Gulf Ins. Co.*, 417 F.3d at 355).  "When venue is improper, [a] [c]ourt 'shall dismiss, or if it be in the

6

interest of justice, transfer such case to any district or division in which it could have been brought.'" *Fedele*, 18 F. Supp. 3d at 319 (quoting 28 U.S.C. § 1406(a)); *see also Daniel v. Am. Bd. of Emergency Med.,* 428 F.3d 408, 435 (2d Cir. 2005) (noting that a court must decide whether to "simply affirm dismissal on these [improper venue] grounds or, in the interest of justice, order transfer of the action to another district where jurisdiction and venue properly obtain").

Even where venue is proper, a court may, "[f]or the convenience of parties and witnesses, in the interest of justice, . . . transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). In determining whether to transfer, courts should first inquire "whether the action could have been brought in the proposed transferee forum." *Solar v. Annetts*, 707 F. Supp. 2d 437, 442 (S.D.N.Y. 2010) (citation omitted). Second, courts should determine "whether the transfer would promote the convenience of parties and witnesses and would be in the interests of justice." *Id.* (citation omitted). In making this determination, courts weigh the following factors: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (quotation marks omitted).

B.  Analysis

    1.  Timeliness & Defendants' Motion to Amend

Rule 12(b) of the Federal Rules of Civil Procedure reads as follows: "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. . . . A motion asserting any of these defenses *must be made before pleading* if a responsive pleading is allowed."  Fed. R. Civ. P. 12(b) (emphasis added).  The statute deploys "unambiguous, mandatory language."  *Moore v. Shahine*, No. 18-CV-463, 2019 WL 948349, at *2 (S.D.N.Y. Feb. 27, 2019).  For this reason, courts have repeatedly found Rule 12(b) motions to dismiss filed after responsive pleadings—specifically, answers—to be "untimely."  *Moore*, 2019 WL 948349, at *2; *see also Tyco Int'l Ltd. v. Walsh*, No. 02-CV-4633, 2003 WL 553580, at *2 (S.D.N.Y. Feb. 27, 2003) ("A motion based on . . . Rule 12(b)(3) is [] untimely when it is served after the answer."); *Lencco Racing Co. v. Arctco, Inc.*, 953 F. Supp. 69, 70 n.1 (W.D.N.Y. 1997) ("A 12 (b)(3) motion to dismiss for improper venue . . . must be filed before the answer . . . ."); *cf. Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 768 (2d Cir. 1983) (noting that a motion to dismiss under 12(b)(2) was untimely when it was served after the defendant's answer); *Sarikaputar v. Veratip Corp.*, No. 19-CV-11168, 2021 WL 3914064, at *2 (S.D.N.Y. Aug. 31, 2021) ("[T]his motion is untimely given that [the defendant], along with two other defendants, filed an answer . . . months before filing the instant motion to dismiss.").

The "proper vehicle" for filing what is essentially a post-answer motion to dismiss "is [R]ule 12(c), which would permit [D]efendants, in theory, to file a motion for judgment on the pleadings."  *In re Livent Sec. Litig.*, 193 F. Supp. 2d 750, 753 (S.D.N.Y. 2002).  But "[u]ntimely Rule 12(b) motions may *only* be converted to Rule 12(c) motions if they assert non-waivable defenses," *Tyco Int'l*, 2003 WL 553580, at *2 (emphasis added) (citing *Patel v. Contemporary*

*Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001)), and it is long-settled that venue is "a waivable defense, lost by failure to interpose timely and sufficient objection," *United States ex rel. Bryant Elec. Co. v. Aetna Cas. & Sur. Co.*, 297 F.2d 665, 669 (2d Cir. 1962) (quotation marks omitted).

Defendants attempt to address this by moving not only to dismiss the Action, but also to amend their Answer. (*See* Not. of Mots.) Rule 15(a) of the Federal Rules of Civil Procedure provides that "[a] party may amend its pleading once as a matter of course within . . . (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). Otherwise, the Rule states, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Beyond these specific rules, Congress instructs courts be lenient with respect to amendments: "The court should freely give leave when justice so requires." *Id.* "Courts therefore usually look favorably on requests to amend under Rule 15(a)." *Oppenheimer & Co. Inc. v. Metal Mgmt., Inc.*, No. 08-CV-3697, 2009 WL 2432729, at *2 (S.D.N.Y. July 31, 2009) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)), *objections overruled*, 2010 WL 743793 (S.D.N.Y. Mar. 2, 2010). Indeed, the Second Circuit has stated that "it is rare that such leave should be denied, especially when there has been no prior amendment." *Ricciuti*, 941 F.2d at 123 (citation omitted) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Notwithstanding the exceptionally permissive framing with which courts are to approach motions to amend, the Court will not grant such a motion in this Action. Rule 12(h)(1) of the Federal Rules of Civil Procedure holds that "[a] party waives any defense listed in Rule 12(b)(2)–(5) by . . . failing to . . . include it in a responsive pleading or in an amendment allowed

by Rule 15(a)(1) *as a matter of course*." Fed. R. Civ. P. 12(h)(1) (emphasis added). "Therefore, an objection to improper venue is waived if it is not raised in a 12(b) motion, in a responsive pleading, or in an amendment to a responsive pleading permitted as a matter of course under Rule 15(a)." *Miller v. Batesville Casket Co.*, 219 F.R.D. 56, 58 (E.D.N.Y. 2003); *see also Tri-State Emp. Servs., Inc. v. Mountbatten Sur. Co.*, 295 F.3d 256, 260 n.2 (2d Cir. 2002) (noting that a "[d]efendant [who] failed to raise any venue challenge in a pre-answer motion or responsive pleading . . . is deemed to have waived any objection to venue"); *United Rentals, Inc. v. Bastanzi*, No. 05-CV-596, 2006 WL 8449258, at *1 (D. Conn. Apr. 4, 2006) (collecting cases). Defendants' window in which to file an amendment to preserve its venue objection came and went nearly a full year ago. "Accordingly, because [Defendants] made no objection to venue in [their] answer and the time to amend the answer as a matter of course has passed, [Defendants] waived [their] right to object on the ground that venue is improper." *Miller*, 219 F.R.D. at 59. Thus, Defendants' Motion to Dismiss on venue grounds is denied as waived. As a result, Defendants' Motion to Amend their Answer is denied as moot.

          2. Venue and Transfer

    While Defendants have waived their ability to seek dismissal under Rule 12(b)(3), whether Defendants' waiver is automatically extended to their ability to move for dismissal or transfer under § 1406(a)—the statute under which Defendants moved to dismiss the case, (*see* Not. of Mot.)—is "unclear." *Johnson v. United Airlines, Inc.*, No. 12-CV-5842, 2013 WL 323404, at *8 (N.D. Ill. Jan. 25, 2013) (holding that it is "unclear whether [the defendant's] waiver of its ability to seek dismissal under Rule 12(b)(3) extends to its request for a transfer under § 1406(a), given that such a transfer is premised on venue being improper in this [d]istrict"

and collecting cases from different jurisdictions that adopt different holdings as to whether waiver of venue under Rule 12(b)(3) forecloses permissive transfer under § 1406).

Transfer—not dismissal—may nonetheless be appropriate under § 1406's sister statute, 28 U.S.C. § 1404.  Because § 1404 is "based on considerations of convenience," it is not properly considered a "waivable" privilege.  *Forsher v. J.M. Smucker Co.*, No. 15-CV-7180, 2019 WL 235639, at *1 (E.D.N.Y. Jan. 16, 2019) (quoting *Agric. Ins. Co. v. Ace Hardware Corp.*, 2000 WL 1568313, at *2 (S.D.N.Y. Oct. 20, 2000)); *see also Benjamin v. Carusona*, No. 09-CV-9722, 2010 WL 4448213, at *8 (S.D.N.Y. Nov. 5, 2010) ("Unlike a motion under Rule 12(b)(3), which is based on a forum's impropriety, a motion under § 1404(a) turns on considerations of convenience.  Waiver of objection to improper venue *does not preclude transfer pursuant to § 1404(a)*." (emphasis added)); *Linde Boc Process Plants LLC v. Boldt Co.*, No. 05-CV-191, 2005 WL 8175946, at *2 (N.D. Okla. July 22, 2005) (collecting cases to show that "[n]umerous district courts have held or remarked that a [c]ourt may transfer venue under § 1404(a) even if [the] defendants waive their right to challenge the propriety of venue in the plaintiff's chosen forum").  And given that Defendants moved only under § 1406, and sought only to dismiss and not to transfer the case, the Court must also note that "[a] transfer may be made under 28 U.S.C. § 1404(a) . . . by the court sua sponte." *Saferstein v. Paul, Mardinly, Durham, James, Flandreau & Rodger, P.C.*, 927 F. Supp. 731, 736 (S.D.N.Y. 1996) (italics omitted); *see also Lead Indus. Ass'n, Inc. v. OSHA*, 610 F.2d 70, 79 n.17 (2d Cir. 1979) ("The broad language of 28 U.S.C. § 1404(a) would seem to permit a court to order transfer [s]ua sponte."); *Tillman v. Vargas*, No. 21-CV-7029, 2021 WL 4777974, at *1 (S.D.N.Y. Sept. 10, 2021) ("[C]ourts may transfer cases on their own initiative."); *Bank of Am., N.A. v. Wilmington Tr. FSB*, 943 F. Supp. 2d 417, 426 (S.D.N.Y. 2013) ("Courts have an independent institutional

11

concern to see to it that the burdens of litigation that is unrelated to the forum that a party

chooses are not imposed unreasonably on jurors and judges who have enough to do in

determining cases that are appropriately before them.  The power of district courts to transfer

cases under [§] 1404(a) sua sponte therefore is well established." (italics omitted) (citation

omitted)); *accord Nalls v. Coleman Low Fed. Inst.*, 440 F. App'x 704, 706 (11th Cir. 2011)

(unpublished decision) ("A district court may sua sponte transfer a civil action to any other

district where it might have been brought if doing so will be convenient for the parties and

witnesses and serve the interest of justice." (italics omitted)).  The Court therefore undertakes

this inquiry in that spirit.

### a.  Materials Considered

Before diving into the substance of its transfer analysis, the Court must first decide a

threshold issue: the scope of information it can consider pursuant to 28 U.S.C. § 1404.

"In deciding a motion to dismiss pursuant to either Federal Rule of Civil

Procedure . . . 12(b)(3), a court may consider evidentiary matters outside the pleadings, by

affidavit or otherwise[.]'" *TradeComet.com LLC v. Google, Inc.*, 693 F. Supp. 2d 370, 375 n.3

(S.D.N.Y. 2010) (quotation marks omitted), *aff'd in part*, 647 F.3d 472 (2d Cir. 2011), *and aff'd

in part*, 435 F. App'x 31 (2d Cir. 2011).  For example, when courts consider transferring cases

upon a party's motion, the movant may submit an "'affidavit explaining why the transferee

forum is more convenient'" for a witness.  *Forsher*, 2019 WL 235639, at *4 (quoting *Stoltz v.

Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826, 2015 WL 5579872, at *7 (E.D.N.Y.

Sept. 22, 2015)).  There is no reason why an analogous affidavit cannot be considered here,

where the Parties have already had the opportunity to brief the Court on the issue of venue.

Thus, the Court may consider Plaintiff's affidavit for purposes of its transfer analysis.

12

b.  Venue

"[W]hether venue is improper in this district is undoubtedly relevant to the Court's

analysis of whether transfer is warranted in light of 'notions of convenience and fairness.'"

*Forsher*, 2019 WL 235639, at \*1 (quoting *Agric. Ins. Co.*, 2000 WL 1568313, at \*2).  Thus, the

Court begins its transfer analysis with a determination of the propriety of venue in this action.

Again, venue is appropriate in:

> (1) a judicial district in which any defendant resides, if all defendants are residents
> of the State in which the district is located; (2) a judicial district in which a
> substantial part of the events or omissions giving rise to the claim occurred, or a
> substantial part of the property that is the subject of the action is situated; or (3) if
> there is no district in which an action may otherwise be brought . . . , any judicial
> district in which any defendant is subject to the court's personal jurisdiction with
> respect to such action.

28 U.S.C. § 1391(b).

Defendants are correct that the Complaint lacks a statement purporting to establish the

basis of Plaintiff's venue.  (*See* Defs.' Mem. 2–3.)  Additionally, as highlighted earlier, Plaintiff

did not file a memorandum of law, which would have presumably laid out Plaintiff's basis for

venue.  The Court is therefore left to divine the theory of venue Plaintiff would have it adopt.

Plaintiff alleges that both Defendants are both located in Kentucky.  (*See* Compl. ¶¶ 13,

14.)  Therefore, the first option by which Plaintiff could establish proper venue is unviable.  *See*

*Grasso v. Bakko*, 570 F. Supp. 2d 392, 397 (N.D.N.Y. 2008) ("Venue is improper under section

(1) because [the] defendant does not reside in New York."); *Saferstein*, 927 F. Supp. at 735 ("In

the instant action, subsection 1 is not available to assert venue in the Southern District of New

York because none of the defendants resides in New York.").  As a result, "Subsection 3 is not

available to assert venue because there is at least one other district—the Eastern District of

[Kentucky]—in which the action can be brought (pursuant to subsection 1) because all

defendants reside there." *Saferstein*, 927 F. Supp. at 735.[5]  By process of elimination, the Court

could rely only on the second option, namely that "a substantial part of the events or omissions

giving rise to the claim occurred, or a substantial part of the property that is the subject of the

action is situated."  28 U.S.C. § 1391(b)(2).

"[W]hen a plaintiff relies on [§] 1391(b)(2) to defeat a venue challenge," a district court

must engage in a two-step inquiry: first, the court must "identify the nature of the claims and the

alleged acts or omissions giving rise to the claims"; and second, the court must "determine

whether a substantial part of the acts or omissions occurred in the district where the suit was

filed." *Fedele*, 18 F. Supp. 3d at 316 (citing *Daniel*, 428 F.3d at 432); *accord Jenkins Brick Co.

v. Bremer*, 321 F.3d 1366, 1372 (11th Cir. 2003) (asking (1) "What acts or omissions by [the

defendant] gave rise to [the plaintiff's] claim?" and (2) "Of those acts, did a 'substantial part' of

them take place in [the chosen venue]?"); *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d

291, 294–95 (3d Cir. 1994) (undertaking an analogous two-step inquiry by identifying alleged

acts or omissions and then asking whether they are substantial).  Notwithstanding this inquiry,

and despite the Court's duty to interpret the statute "strictly," *Gulf Ins.*, 417 F.3d at 357,

"[§] 1391(b)(2) does not restrict venue to the district in which the 'most substantial' events or

---

[5] Plaintiff avers that Defendants are located in Pikeville, KY, (Compl. ¶¶ 13, 14), and Defendants seemingly agree, (*see* Defs.' Mem. 1–2).  The Court takes judicial notice of the fact that Pikeville, Kentucky is located in the Eastern District of Kentucky.  *Cf. Ventricelli v. Nicklin*, No. 19-CV-230, 2020 WL 132334, at *10 n.21 (N.D.N.Y. Jan. 13, 2020) ("[T]he [c]ourt takes judicial notice that Newburgh, New York, is located within Orange County, New York, and that Orange County is one of the counties located within the Southern District of New York."); *Rindfleisch v. Gentiva Health Sys., Inc.*, 752 F. Supp. 2d 246, 247–48 (E.D.N.Y. 2010) ("The [c]ourt takes judicial notice of the fact that Auburn, New York is located in the Northern District of New York, and Kinston, North Carolina is located in the Eastern District of North Carolina."). Indeed, the District Court for the Eastern District of Kentucky maintains a courthouse in Pikeville.  *See* United States District Court, Eastern District of Kentucky, https://www.kyed.uscourts.gov/.

omissions giving rise to a claim occurred," *Daniel*, 428 F.3d at 432; rather, this provision

"'contemplates venue can be appropriate in more than one district' and 'permits venue in

multiple judicial districts as long as a "substantial part" of the underlying events took place in

those districts,'" *id.* (quoting *Gulf Ins. Co.*, 417 F.3d at 356); *see also Bates v. C & S Adjusters,*

*Inc.*, 980 F.2d 865, 867 (2d Cir. 1992) ("[A]dmonition against recognizing multiple venues has

been disapproved.").

Finally, "[i]n the case of multiple claims, proper venue must be established with respect

to each cause of action asserted." *Saferstein*, 927 F. Supp. at 736. Thus, the Court must review

the basis for venue vis-à-vis each individual claim. Finding that Plaintiff has not met his burden

and established a basis for venue with respect to any claim, and in recognition that "the purpose

of statutorily specified venue is to protect the *defendant* against the risk that a plaintiff will select

an unfair or inconvenient place of trial," *Leroy v. Great W. United Corp.*, 443 U.S. 173, 183–84

(1979) (emphasis in original), the Court concludes that it is in the interest of justice to transfer

this Action to the Eastern District of Kentucky.

### i.  Breach of Contract

"In determining whether venue is proper for a breach of contract action . . . , courts

consider a number of factors, including where the contract was negotiated or executed, where it

was to be performed, and where the alleged breach occurred." *PI, Inc. v. Quality Prods., Inc.*,

907 F. Supp. 752, 757–58 (S.D.N.Y. 1995).

For example, courts have found venue proper where parties to a contract spoke to one

another in the district in question concerning the subject matter of the contract. *See Santos v.*

*Medina*, No. 18-CV-2685, 2019 WL 1099806, at *6 (S.D.N.Y. Mar. 8, 2019) (finding venue

appropriate in the Southern District of New York where the parties engaged in business meetings

in the district and the fruits of the contract were to occur in the district); *Cold Spring Harbor*

*Lab'y v. Ropes & Gray LLP*, 762 F. Supp. 2d 543, 555 (E.D.N.Y. 2011) (collecting cases in the Eastern and Southern Districts of New York holding that breach of contract actions were properly venued in those courts where "a communication [was] transmitted to or from" the district concerning the contract's terms (quotation marks omitted)); *Okasa v. Hyppolite*, No. 91-CV-4093, 1992 WL 35931, at *1 (S.D.N.Y. Feb. 19, 1992) (finding that venue for breach of contract claim was proper in the Southern District of New York "because extensive negotiations and preparations for the [agreement] took place in [the district]"). In this Action, however, neither the Complaint nor the affidavit contains any allegations that Plaintiff spoke to Defendants while he was in the district—either in person or over the phone. (*See generally* Compl.; Lehrer Aff.) The affidavit states only that his permanent address at the time the parties entered into the agreement was in New York. (*See* Lehrer Aff. ¶¶ 9–10.)

Relatedly, courts have considered where the contract itself was actually signed in its venue analysis. *See Moyglare Stud Farm, Ltd. v. Due Process Stable, Inc.*, 562 F. Supp. 289, 292 (S.D.N.Y. 1983) (finding venue proper in the district in which the contract was signed). Plaintiff attests to the fact that he signed the contract in New York. (Lehrer Aff. ¶ 25.) On the other hand, Patton attests to the fact that he has "not had any contacts with the State of New York as it relates to this transaction." (Defs.' Mem. Ex. 4 (Affidavit of James Patton) ("Patton Aff."), ¶ 3 (Dkt. No. 30-4).) Moreover, Plaintiff's address listed on the contract is in Florida, and the stamp from the notary public appears to be from Kentucky, undermining Plaintiff's assertion. (*See* Agreement.) "Even if [P]laintiff actually signed the contract in this District, despite his residence elsewhere, such 'execution' would not in itself turn this District into the 'district in which a substantial part of the events or omissions giving rise to the claim occurred.'" *Bell v. Classic Auto Grp., Inc.*, No. 04-CV-693, 2005 WL 659196, at *5 (S.D.N.Y. Mar. 21, 2005)

16

(citation omitted).  In light of the contrasting statements in the affidavits and the factual evidence against him, this factor does not assist Plaintiff in establishing proper venue in the Southern District of New York.

Courts have also found venue appropriate when a contract demands that certain portions of a financial transaction occur in the district.  *See Concesionaria DHM, S.A. v. Int'l Fin. Corp.*, 307 F. Supp. 2d 553, 560–61 (S.D.N.Y. 2004) (finding venue appropriate in the Southern District of New York because, in part, "[t]he agreements primarily involve financial transactions that were designated to occur through New York City banks").  But the Complaint and affidavit also omit any reference to the source, route, or destination of the funds in question.  (*See generally* Compl.; Lehrer Aff.).  Plaintiff's affidavit instead states only that "all of the payments made by me to [] Defendants were made in New York."  (Lehrer Aff. ¶ 24.)  This statement does not specify whether the funds emanated in New York, or whether Plaintiff simply effectuated a transfer of funds located elsewhere while he was in New York.  Regardless, a New York bank must be specifically designated in the contract, otherwise "[t]he payment could have been made anywhere and it would not have changed the nature of [P]laintiff['s] allegations."  *Leema Enters., Inc. v. Willi*, 575 F. Supp. 1533, 1537 (S.D.N.Y. 1983).

Finally, while the Complaint references property to which Plaintiff was given title as collateral, (Compl. ¶ 25), it fails to allege that the Southern District of New York "is the jurisdiction within which the property is located," which could influence the Court's venue analysis.  *Est. of Leventhal ex rel. Bernstein v. Wells Fargo Bank, N.A.*, No. 14-CV-8751, 2015 WL 5660945, at *5 (S.D.N.Y. Sept. 25, 2015).[6]  In sum, based on the allegations considered in

---

[6] The Court will not blindly surmise the location of the equipment, but common sense suggests that the equipment is likely in Kentucky.  Plaintiff avers in the Complaint that the titles

their entirety, "*no part* of the contract was to be performed in New York." *PI, Inc.*, 907 F. Supp. at 758 (emphasis added).

Given the allegations put forward in the Complaint, the facts to which Plaintiff attested in his Affidavit, and the express language in the contract, Plaintiff has failed to satisfy his burden of establishing a basis for proper venue in the Southern District of New York for his breach of contract claims.

### ii. Breach of Fiduciary Duty

For the same reasons Plaintiff failed to meet his burden of establishing proper venue for his breach of contract claim, venue is improper in this District for Plaintiff's claims of breach of fiduciary duty.[7]  Breach of fiduciary duty claims often arise in legal malpractice actions, including when attorneys are located in different districts than their clients, which provide an analogous and therefore helpful exemplar to the present Action.  In such cases, claims are properly venued where the lawyers performed their work, including preparing for and litigating a case.  *See Cold Spring*, 762 F. Supp. 2d at 556 (finding venue improper in the Eastern District of New York for a client's claim that a law firm and attorney committed legal malpractice in drafting and prosecuting a patent, even though the invention was developed in the district, and the inventor was located in the district while he had telephone and email conversations regarding

---

were for "equipment owned by J&M," (Compl. ¶ 25), and in his affirmation in support of the Motion to Dismiss, Patton affirmed that his business is based in Kentucky and that he has "not had any contacts with the State of New York as it relates to this transaction," (Patton Aff. ¶ 3). Therefore, it is not a far jump to believe that the equipment may be located in Kentucky.

[7] The Court simply notes here that, pursuant to New York law, "an arm's-length business relationship does not, without more, establish a fiduciary duty to each other." *In re Refco Inc. Sec. Litig.*, No. 07-MD-1902, 2010 WL 11475742, at *21 n.47 (S.D.N.Y. Mar. 2, 2010) (citing *WIT Holding Corp. v. Klein*, 724 N.Y.S.2d 66, 68 (App. Div. 2001)), *report and recommendation adopted*, 2011 WL 13168455 (S.D.N.Y. May 4, 2011).  Nevertheless, the Court assumes the existence of such a duty solely for purposes of its venue and transfer analysis.

the patent application with the attorney, as the attorney performed work on the patent application in Massachusetts and in the Southern District of New York, the patent was prosecuted in Virginia, and the attorney's actions that allegedly constituted malpractice did not occur in the course of his communications with inventor); *Astor Holdings, Inc. v. Steefel, Levitt & Weiss, P.C.*, No. 03-CV-1242, 2003 WL 21108316, at *7 (S.D.N.Y. May 14, 2003) (holding that venue was not proper in the Southern District of New York where the plaintiff resided because the allegedly erroneous advice to file a case in New York that could result in a finding of civil contempt against the plaintiff originated from the defendant's office in California); *see also Club Vista Fin. Servs., LLC v. Maslon, Edelman, Borman & Brand, LLP*, No. 10-CV-264, 2010 WL 3021889, at *6 (D. Nev. July 29, 2010) (granting a motion to transfer venue under § 1404(a) and noting that the action giving rise to the legal malpractice claim is the legal work performed, and therefore venue is proper in the location of the legal representation).

Once again, neither the Complaint nor the Affidavit states that Defendants' actions to breach said duty took place while Defendants were in New York.  (*See generally* Compl.; Lehrer Aff.)  Moreover, neither document states that Plaintiff was in New York while Plaintiff and Defendants discussed the actions in question, foreclosing the possibility that the breach of the duty extended into the Southern District of New York via "telephone conversations and corresponde[nce]" with Plaintiff.  *Cold Spring*, 762 F. Supp. 2d at 556 (quotation marks omitted) (highlighting the fact that in one out-of-circuit case, venue was found proper in Utah, where the plaintiff resided, despite the fact that plaintiff's attorneys lived and practiced in California, "because the plaintiff had 'telephone conversations and corresponded with each of the [d]efendants from Utah' and therefore the attorneys had 'purposefully and regularly directed their contacts toward a Utah resident when they were retained and throughout their handling of

the [litigation]'" (quoting *Stewart v. Stoller*, No. 07-CV-552, 2008 WL 4168519, at *4 (D. Utah

Aug. 28, 2008))).  Thus, assuming arguendo that a fiduciary duty existed, the Court finds that the

alleged breach would have occurred in Defendants' location or where improper actions that in

fact breached that duty occurred, *Saferstein*, 927 F. Supp. at 736, which in this case is not the

Southern District of New York.

### iii.  Remaining Claims (Conversion, Demand for an Accounting, Theft, Unjust Enrichment)

Again, for overlapping reasons, Plaintiff has not met his burden of establishing that venue

for the remaining claims is the Southern District of New York.  Indeed, the Complaint "contains

no allegations that Defendants' actions occurred in New York."  *LS Parry, Inc. v. Tepeyac, LLC*,

No. 18-CV-11808, 2020 WL 5026589, at *5 (S.D.N.Y. Aug. 25, 2020).  Absent the specific

venue considerations inherent in breach of contract and breach of fiduciary duty claims, more

general considerations of venue are appropriate for the remaining claims.  And as has been stated

in myriad contexts for venue determinations under 28 U.S.C. § 1391(b)(2), "the acts of [the]

[d]efendants, not the activities of or harm to [the] [p]laintiff, determine where venue properly

lies." *Ne. Landscape*, 2015 WL 8492755, at *4.  "Such an understanding of venue appears

consistent with the Supreme Court's advisement that 'the purpose of statutorily specified venue

is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient

place of trial.'"  *LS Parry*, 2020 WL 5026589, at *5 (quoting *Leroy*, 443 U.S. at 183–84).

The Second Circuit has joined courts of appeal in endorsing this defendant-centric view.

*See Daniel*, 428 F.3d at 432 (citing *Woodke v. Dahm*, 70 F.3d 983 (8th Cir. 1995) approvingly,

which held that "by referring to events or omissions giving rise to the claim, Congress meant to

require courts to focus on relevant activities of the defendant, not of the plaintiff" (quoting

*Woodke*, 70 F.3d at 985)); *see also Prospect Cap. Corp. v. Bender*, No. 09-CV-826, 2009 WL

20

4907121, at *3 (S.D.N.Y. Dec. 21, 2009) ("[T]he Second Circuit recently has made clear that when a court examines the question of whether venue in a forum is proper, it must focus on where the *defendant's* acts or omissions occurred." (citing *Daniel*, 428 F.3d at 432)); *accord Hoover Grp., Inc. v. Custom Metalcraft, Inc.*, 84 F.3d 1408, 1410 (Fed. Cir. 1996) ("Venue requirements exist for the benefit of defendants"); *Woodke*, 70 F.3d at 985 (8th Cir. 1995) (noting that "by referring to 'events or omissions giving rise to the claim,' Congress meant to require courts to focus on relevant activities of the defendant, not of the plaintiff"); *Cottman Transmission*, 36 F.3d at 294 (explaining that "the current statutory language still favors the defendant in a venue dispute [and] . . . is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute").

As laid out in more detail above, the Complaint does not allege where the money at issue was wired to or from, nor does it locate the collateralized property at issue.  *See supra* II.B.3.a. In fact, the Complaint references the state of New York only four times: thrice concerning the address of Plaintiff's Counsel, and once alleging that Plaintiff "has an address" in New York. (*See generally* Compl.)  The former references are entirely irrelevant, while the final reference bears not at all on the question of where "the events or omissions *giving rise to the claim occurred*." 28 U.S.C. § 1391(b)(2) (emphasis added).  "Rather, it appears that Plaintiff's sole basis for filing suit in New York is his residency, which is not enough to support venue here." *Blauschild v. Tudor*, 31 F. Supp. 3d 527, 533 (E.D.N.Y. 2014); *see also Slobig v. Gannuscia*, No. 16-CV-3783, 2018 WL 1305459, at *3 (S.D.N.Y. Mar. 9, 2018) (holding that economic injury alone is not sufficient to establish venue); *Ne. Landscape*, 2015 WL 8492755, at *4 (collecting cases to establish the same); *New Son Yeng Produce, LLC v. A & S Produce, Inc.*, No. 07-CV-4292, 2009 WL 2568566, at *11 (E.D.N.Y. Aug. 19, 2009) (finding venue improper

where "New York ha[d] almost no connection to the case, other than the fact that the plaintiff [was] located here"); *cf. Astor Holdings, Inc. v. Roski*, No. 01-CV-1905, 2002 WL 72936 at *9 (S.D.N.Y. Jan. 17, 2002) ("There is an obvious potential for unbounded venue if the courts were to find venue regardless of where the acts occurred, based solely on the existence of economic harm felt in the district where the plaintiff resides or is headquartered. Therefore, while the locus of the harm suffered is a factor to consider, the case law does not support the theory that venue is proper on an economic-effects inquiry alone.").[8]  In sum, the Court cannot find that venue is proper in the Southern District of New York for Plaintiff's remaining claims.

---

[8] Defendants suggest that Plaintiff has committed sanctionable offenses by misrepresenting his location in this Action. (Letter from Daniel Ruggiero, Esq., to Hon. Judge Kenneth M. Karas, Aug. 13, 2021 ("Defs.' Aug. 13, 2021, Letter"), at 1–2 (Dkt. No. 26).)  This may not be entirely accurate, but neither is it unfounded, as Plaintiff is far from the paragon of clarity or transparency.

In Plaintiff's Counsel's letter dated August 13, 2021, Counsel writes: "[Plaintiff's] California driver's license lists his New York address. . . . A copy of his license is annexed herewith." (Letter from Brian Condon, Esq., to Hon. Judge Kenneth M. Karas, Aug. 13, 2021 ("Pl.'s Aug. 13, 2021, Letter"), at 1 (Dkt. No. 25).)  The next page, however, includes what purports to be Plaintiff's California license, but lists a California address, contradicting Counsel's statement. (*Id.* at 2.)  Moreover, the photograph shows that the license expired in March 2021.  Counsel also states in his letter: "At the time the instant action was filed, Mr. Lehrer was unable to update his license due to COVID." (Pl.'s Aug. 13, 2021, Letter at 1.)  Yet, in Plaintiff's affirmation, Plaintiff includes a photograph of what purports to be his California driver's license with the address listed in the Complaint, with an issuance date of November 21, 2017, (Lehrer Aff. Ex. A (Dkt. No. 31-1)), nearly two and a half years before the onset of the Covid-19 pandemic.

This confusion is only enhanced when combined with the fact that Plaintiff is involved in ongoing litigation in which he notes he is domiciled in Florida. (*See* Defs.' Aug. 13, 2021, Letter, 2; *see also* Compl., *Lehrer v. Comer*, No. 20-CV-5228 (E.D. Pa. Oct. 20, 2020), Dkt. No. 1; Am. Compl., *Lehrer v. Comer*, No. 20-CV-5228 (E.D. Pa. Oct. 20, 2020), Dkt. No. 30.)  Ultimately, this affirmation is in line with Plaintiff's affidavit, in which avers that his "relocat[ion] to Florida . . . did not happen until late 2020/early 2021." (Lehrer Aff. ¶ 23.)

Adding to the confusion is the statement in the Complaint that Plaintiff "has an address" in the Southern District of New York, (Compl. ¶ 12), notwithstanding Plaintiff's purportedly longstanding plans to relocate to Florida and the realization thereof, (Lehrer Aff. ¶ 23), yet Plaintiff has not amended or clarified the Complaint.  It is long-established that "'residence' and 'domicile' are two perfectly distinct things." *Delaware, L. & W.R. Co. v. Petrowsky*, 250 F. 554,

### c.  Transfer

As recounted earlier, § 1404(a) permits the transfer of a civil action to any other district where the case might have been brought, as long as such a transfer serves "the convenience of parties and witnesses, [and is] in the interest of justice."  28 U.S.C. § 1404(a).  "This section is a statutory recognition of the common law doctrine of forum non conveniens as a facet of venue in the federal courts."  *Ravenwoods Inv. Co. v. Bishop Cap. Corp.*, No. 04-CV-9266, 2005 WL 236440, at *2 (S.D.N.Y. Feb. 1, 2005) (italics omitted).  In practical terms, the purpose of § 1404(a) is to "prevent the waste 'of time, energy[,] and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'"  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26, 27 (1960)).

To achieve this aim, "[§] 1404(a) . . . place[s] discretion in the district court to . . . transfer [actions] according to an 'individualized, case-by-case consideration of convenience and fairness.'"  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen*, 376 U.S. at 622); *cf. In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992) (holding in the context of § 1404 that determinations regarding "transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness").

---

560 (2d Cir. 1918).  Indeed, "a person can have multiple residences, but only one domicile." *Levy v. Suissa*, No. 16-CV-2532, 2021 WL 2402240, at *3 (E.D.N.Y. Mar. 19, 2021), *report and recommendation adopted*, 2021 WL 2401011 (E.D.N.Y. June 11, 2021); *see also Bunn v. Dash*, No. 19-CV-11804, 2020 WL 4586790, at *5 (S.D.N.Y. Aug. 10, 2020) ("A natural person is a resident of only one state for venue purposes: the state of his or her domicile."); *accord Whitehouse v. Comm'r*, 963 F.2d 1, 1–2 (1st Cir. 1992) ("A person can have only one domicile at a time."), *as amended* (July 7, 1992).  Thus, in the Court's opinion, Defendants have good reason to be confused as to Plaintiff's current location, given his plans to relocate prior to filing, his choice of filing venue, his current domicile in Florida, and his omission of a request to transfer in opposing Defendants' Motion.

Thus, the "core determination under § 1404(a) is the center of gravity of the litigation." *Ravenwoods*, 2005 WL 236440, at *2 (citation omitted).

The Court's discretion is not unbounded, though.  Rather, whether transfer is appropriate under § 1404 demands a two-step inquiry: "first, 'whether the action could have been brought in the proposed transferee forum'; and second, 'whether the transfer would promote the convenience of parties and witnesses and would be in the interests of justice.'" *Solar*, 707 F. Supp. 2d at 442 (quoting *Blum v. Salomon*, No. 06-CV-3149, 2006 WL 3851157, at *3 (S.D.N.Y. Dec. 28, 2006)); *see also Baez v. Malin*, No. 18-CV-2850, 2020 WL 1445704, at *11 (S.D.N.Y. Mar. 25, 2020) (adopting and applying *Solar*'s two-step inquiry under § 1404).

The case could have been brought in the Eastern District of Kentucky, the district in which Defendants reside.  (*See* Compl. ¶¶ 13, 14.)  Accordingly, transfer meets this initial threshold inquiry.

In determining whether the Court should transfer the action, however, the Second Circuit instructs district courts to weigh seven factors: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *N.Y. Marine*, 599 F.3d at 112 (citation and quotation marks omitted).

The Second Circuit has made clear that Plaintiff's choice of forum is "presumptively entitled to substantial deference." *Gross v. British Broad. Corp.*, 386 F.3d 224, 230 (2d Cir. 2004).  However, "[P]laintiff's selection is entitled to less deference here," as New York is no longer Plaintiff's home state, and where "the case lacks material or significant contacts with the

forum state" as a result of his move.  *Kwik Goal, Ltd. v. Youth Sports Publ'g Inc.*, No. 06-CV-395, 2006 WL 1489199, at *2 (S.D.N.Y. May 3, 2006).

Beyond Plaintiff's choice of forum, each other factor either favors transfer or is neutral. For example, the third factor, "[t]he locus of operative facts[,] is a primary factor in determining whether to transfer venue."  *Steck v. Santander Consumer USA Holdings Inc.*, No. 14-CV-6942, 2015 WL 3767445, at *6 (S.D.N.Y. June 17, 2015) (citation omitted).  "In determining the locus of operative facts, courts look to the site of the events from which the claim arises."  *Mastr Asset Backed Sec. Tr. 2007-WMC1 ex rel. U.S. Bank Nat'l Ass'n v. WMC Mortg. LLC*, 880 F. Supp. 2d 418, 423 (S.D.N.Y. 2012) (citation omitted).  As covered in great detail above, it must be said that the locus of facts is in the Eastern District of Kentucky.

The convenience of the parties would also be served by transferring the action to Kentucky.  Neither party lives in New York; rather, Plaintiff has "relocated to Florida."  (Lehrer Aff. ¶ 23.)  Thus, litigation in New York inconveniences both parties, and transfer would in fact diminish both parties' voyages.

The remaining factors are agnostic on the question of transfer.  First, no Party has suggested that there would be witnesses were trial to come to fruition, let alone that "there are witnesses who would 'not voluntarily testify' in the [Eastern] District [of Kentucky] or that litigating it in the [Eastern] District [of Kentucky] would be 'financially burdensome,'" meaning these two factors are neutral.  *Miller v. Annucci*, No. 17-CV-4698, 2019 WL 4688539, at *10 (S.D.N.Y. Sept. 26, 2019) (quoting *Tlapanco v. Elges*, 207 F. Supp. 3d 324, 332 (S.D.N.Y. 2016)).[9]  As well, "[d]ue to the convenience of electronic production, '[t]he location of relevant

---

[9] To the extent witnesses exist, there is reason to believe they are as likely located in Kentucky as in New York.  *See supra* n.6.

documents and the ease of access to sources of proof is mostly a neutral factor.'" *Id.* (alteration in original) (quoting *Tlapanco*, 207 F. Supp. 3d at 330–31); *see also U.S. Commodity Futures Trading Comm'n v. Wilson*, 27 F. Supp. 3d 517, 540 (S.D.N.Y. 2014) ("Courts in this district recognize that [t]he location of documents[] is neutral in today's era of photocopying, fax machines[,] and Federal Express." (first alteration in original) (quotation marks omitted)). Finally, "[s]ince this action is at its earliest stages, it would not be inefficient to transfer the case." *Freeplay Music, LLC v. Gibson Brands, Inc.*, 195 F. Supp. 3d 613, 621 (S.D.N.Y. 2016); *see also Frame v. Whole Foods Mkt., Inc.*, No. 06-CV-7058, 2007 WL 2815613, at *7 (S.D.N.Y. Sept. 24, 2007) ("Since the case is at its earliest stages, there would be little loss in judicial economy by transferring the case.").

At bottom, the Court's finding that venue is improper in this district, "in combination with considerations of convenience, justice[,] and common sense, counsel in favor of transferring this [A]ction to the [Eastern] District of [Kentucky] pursuant to § 1404(a)." *Forsher*, 2019 WL 235639, at *1.

### III.  Conclusion

For the foregoing reasons, Defendants' Motions to Amend its Answer and to Dismiss for Improper Venue are denied in part and granted in part.  The Court concludes that the case should be transferred to the Eastern District of Kentucky.  The Clerk of Court is respectfully requested

to terminate the pending Motions, (Dkt. No. 29), and transfer the case to the Eastern District of Kentucky forthwith.

SO ORDERED.

Dated:   July 1, 2022
        White Plains, New York

_____
KENNETH M. KARAS
United States District Judge